*WILLIAM S. RHYNE v. C. L. TORRENCE.

*Will— Codicil—Devise.*

1. A codicil will not be interpreted to revoke or change distinct provisions in the will, unless it appears from the terms used, or by clear implication, that it was the purpose of the testator to make such revocation or alteration.

2. A testatrix devised to her four daughters "four-eighths of all my estate for their natural lives, then to be equally divided among their respective children"; in a codicil, she provided that her house and lot and farm should "remain as it is, so that all of them (her children) that wish can have a home on it, unless they wish to dispose of it otherwise": *Held*, that the codicil did not enlarge the life-estate of the devisees under the will into fee-simple estates.

CIVIL ACTION, tried at Fall Term, 1891, of MECKLENBURG Superior Court, *Hoke, J.*, presiding.

On the 12th of December, 1883, the defendant sold and undertook to convey to the plaintiff the tract of land described in the complaint with covenants of warranty of title in fee-simple, and that he was seized and had the right to convey, etc. The plaintiff alleges that the defendant did not have such title, and that he is as a consequence endamaged to the amount of $1,667.50, etc.

The defendant denies the material allegations of the complaint, and alleges: That prior to the year 1868, the land in question was owned in fee-simple by one Violet W. Alexander, who in that year died in the county of Mecklenburg, leaving a last will and testament, which was duly admitted to probate. That of the children of the said Violet W. Alexder, mentioned in the said will, W. W. Alexander died in the life-time of the testatrix and without children; the others were living at her death; that prior to the 12th day

AVERY and CLARK, JJ., did not sit upon the hearing of this appeal.

of March, 1881, Dovey A. .W. Cunningham, one of the daughters, and H. L. Alexander, one of the sons mentioned in said will, died intestate and without children; that on the said 12th day of March, 1881, the defendant purchased the land in question and received a deed in fee-simple for the same, executed by S. B. Alexander, Julia S. Smith, M. S. Alexander, A. L. Alexander, I. L. Hayes and husband W. J. Hayes, Junius W. Hayes and wife Lucy C. Hayes, and John W. Hayes; that of the grantors in said deed W. J. Hayes is the husband of Isbella L. Hayes, and Junius W. Hayes and John W. Hayes are and were, at the making of said deed, the only children of Isabella; Lucy C. Hayes is the wife of Junius W. Hayes; all the other grantors are the children of the said testatrix who were living on the 12th of March, 1881, when the said deed was executed to this defendant; that at the time the said deed was made, S. B. Alexander had infant children, and still has, but none of the female grantors have children excepting Isabella Hayes, nor ever had any; that the land in dispute is the land mentioned in the codicil to the will of Violet W. Alexander, and therein called "my farm."

The following is a copy of so much of the will of the testatrix above named as is material here:

"I give and bequeath to my executors one-eighth part of my estate to have and to hold to them, the survivors and survivor of them, his heirs and assigns, upon the following trust, that is to say, upon trust that they, the said trustees, do from time to time, during the natural life of my daughter Dovey A. W. Cunningham, pay and dispose of the annual profits arising therefrom upon her sole and separate receipts whenever they may think she stands in need of the same, and permit her to receive and take the profits to and for her sole and separate use and benefit, to the end and intent that this or any other part of my estate that may happen to fall to her part or portion may not be subject or liable to the control,

order, direction, debts or engagements of her husband, either present or future; and from and after the decease of my daughter Dovey A. W. Cunningham, it is my will that this one-eighth part be divided between all my children as hereafter prescribed. I give and bequeath to my daughters, Isabella L. Hayes, Mary S. Alexander, Julia S. Smith and Alice L. Alexander, four-eighths of all my estate, both real and personal, for their natural lives for their sole and separate use, free from the control of any husband that they may have now or hereafter, then to be equally divided among their respective children, and if any of them should die not leaving children, then her or their portion to be equally divided among my children living and the children of my children dead, they representing their ancestors. I give and bequeath to my sons, H. L. Alexander, W. W. Alexander and S. B. Alexander, three-eighths of all my estate, both real and personal, to them and their heirs and assigns, to be equally divided, share and share alike, but if any of my sons shall die without having children or disposing of the same, then his or their share shall be equally divided among my daughters and sons as aforesaid equally, and their children by representation."

The following is a copy of the codicil to the will, parts of which are above recited:

"My house and lot, and all of my furniture and farm to remain as it is so that all of them that wish can have a home on it, unless they wish to dispose of it otherwise. My lands in Tennessee I will and bequeath to my son S. B. Alexander.

Signed,                       V. W. ALEXANDER." [Seal.]

The plaintiff demurred to the answer, assigning divers grounds of demurrer.

The Court sustained the demurrer upon grounds specified, and entered judgment for the plaintiff. The defendant excepted and appealed.

*Mr. P. D. Walker*, for plaintiff.
*Mr. C. W. Tillett*, for defendant.

MERRIMON, C. J.—after stating the case: It is conceded that the defendant was not seized in *fee* of the land described in the complaint, and that there was a breach of his covenant specified as alleged therein, unless the codicil to the will above recited so enlarged the devise in the latter to the testatrix's daughters Isabella L., Mary S., Julia S., and Alice L., as to give them estates in fee-simple instead of for the term of their natural lives. So that we are called upon to interpret the codicil set forth above and determine how, in what respects, and to what extent, it modifies and changes the will in respects affecting the cause of action, the subject of this action.

It is to be observed that the terms and purpose of the will are clear and unmistakable. The testatrix had eight children, five daughters and three sons, whom she recognized and provided for. She regarded her estate, both real and personal, as consisting of eight parts or shares. First, she provided for her daughter Dovey A. one share, one-eighth. This she devised to her executors in trust for this daughter, and they were charged to pay and dispose of the annual profits arising therefrom to her for her sole and separate use, as directed, during her natural life, and after her death that eighth was to go to her other sisters and brothers named. She, secondly, devised and bequeathed to her four daughters above named, four-eighths of her property, both real and personal, for their natural lives, for their sole and separate use, "and if any of them should die not leaving children, then her or their portion to be equally divided among my (her)

children living and the children of my children dead, they
representing their ancestors."

She, thirdly, bequeathed and devised to her three sons
named, in fee, the other three-eighths of her property, both
real and personal, with the limitation that "if any of my
(her) sons shall die without leaving children or disposing of
the same, then his or their share shall be equally divided
among my daughters and sons as aforesaid, equally, and
their children by representation." It seems that a leading
purpose was to keep her property after her death in her own
family as nearly as practicable. Whether such dispositions
were wise or best suited the convenience of the objects of her
bounty or not, she had power to make them. They do not
contravene any principle of law, and, hence, must operate as
she intended, and be upheld by the Courts in every perti-
nent connection. *Overman* v. *Sims*, 96 N. C., 451; *Galloway*
v. *Carter*, 100 N. C., 111.

The testatrix certainly had power to revoke, modify or
change these very clear dispositions of her property by a
codicil, but it is a well settled rule that such clear disposi-
tions of property will not be disturbed further than is abso-
lutely necessary for the purpose of giving effect to the codi-
cil. It may be said that a codicil is not a revocation of the
will, except in the exact degree in which it is inconsistent
with it, unless there be words of revocation. It must appear
from the terms of the codicil, or from clear implication, that
the purpose of it is to revoke or change distinct provisions
of the will. 2 Jarm. on Wills, 189, and notes (2 Am. Ed.);
2 Greenleaf, 681; Ire. on Exrs., 6, 26, 27.

It is insisted here that the codicil under consideration had
the effect and intends to enlarge the several devises of
the will so that the several devisees took estates in fee-simple
unaffected by any condition or limitation. We do not think
it can receive such interpretation. There are no revocatory
words in it, nor are there words that strongly imply revoca-

tion, except so much thereof as devises the lands of the testatrix in Tennessee to her son named. It is expressed in these words: " My house and lot and all my furniture and farm, to remain as it is, so that all of them that wish can have a home on it, unless they wish to dispose of it otherwise. My lands in Tennessee, I will and bequeath to my son S. B. Alexander."

The whole will manifests a fixed purpose of the testatrix to provide only for her children and to keep her property in their hands as far as practicable. This is especially so as to her daughters. She had a fond care for them—for all her children. The fair inference is, that she earnestly desired they should live and have a home together at the " old homestead," and hence, she expressed in a very brief codicil the wish that her " house and lot and all of my (her) furniture and farm to remain" as she left it, so that " all of them "—all of her children—" that wish can have a home on it "—on the lot and farm—" unless they "—her children—all of them—" wish to dispose of it otherwise." How " dispose of it otherwise?" Clearly we think " otherwise," as they might see fit according to their several and respective rights, estates and interests as created by and specified in the will. If they—the children—desired to abandon the home, they might do so; they might sell such estate as they respectively had; they might lease it for rent. Some of them might live there and pay rent to such as did not choose to live there. She did not express any desire to derange or modify the clear disposition of her property by the will. It does not appear from any expression or suggestion in the codicil that she had motive or purpose to do so. The reasonable inference is, that if she intended to change such distinctive disposition of her property, she would have said so in clear terms. She was at the time she executed it, advertent to the disposition of property—she distinctly and plainly devised to one of her sons her lands in Tennessee. And so

109 — 42

if she had intended to change the devises to her other children she would have done so in 'like clear terms. Indeed, she must have done so, in order to have the codicil revoke, modify or enlarge the devises contained in the will. We cannot doubt that the interpretation of the codicil by the Court below is the correct one, and we concur therein.

Affirmed.